**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KRISTINA OSOBKA,

        Plaintiff,

v.

METROPOLITAN LIFE
INSURANCE COMPANY,

        Defendant.

Case No. 16-12311
Hon. Terrence G. Berg

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION TO REVERSE DEFENDANT'S BENEFITS
DETERMINATION AND GRANTING DEFENDANT'S
CROSS-MOTION TO AFFIRM (Dkt. 9, 10)**

## I. Introduction

Plaintiff Kristina Osobka challenges Defendant Metropolitan Life Insurance Company's ("MetLife's") denial of her long-term disability benefits application. Plaintiff is a former Comcast Corporation ("Comcast") customer service representative who contends she suffered from chronic fatigue syndrome ("CFS") and was unable to work. She filed for benefits under Comcast's long-term disability plan, which Defendant administered. After Defendant denied both her initial application and her appeal, Plaintiff filed this lawsuit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Before the Court are two motions: (1) Plaintiff's motion to reverse Defendant's denial of her long-term disability (LTD) benefits application, and (2) Defendant's cross-motion to affirm its denial. The dispositive question is whether Defendant abused its discretion in crediting the opinions of independent physician consultants rather than those of Plaintiff's treating physicians. For the reasons outlined below, the Court finds that Defendant was within its discretion in denying Plaintiff's application for long-term disability benefits. Therefore, Plaintiff's motion to reverse Defendant's decision must be **DENIED**, and Defendant's motion to affirm must be **GRANTED**.

## II. Background

Plaintiff worked for Comcast as a customer service representative from June 23, 2013 until August 6, 2014. At Comcast, she participated in the Comprehensive Health and Welfare Benefit Plan ("the Plan"), a long term disability policy that Defendant provided and administered.

Defendant makes initial eligibility determinations on claims for disability benefits under the Plan. If denied, employees may appeal to Defendant for further review of their claim. Plaintiff claimed she suffered from various viral infections, which caused chronic fatigue syndrome (CFS), rendered her disabled, and forced her to take leave from her job at Comcast on August 6, 2014. On

2

July 13, 2015, Defendant denied Plaintiff's initial application for LTD benefits and on May 25, 2016, Defendant denied Plaintiff's appeal.

   *1. MetLife's LTD Plan*

The Plan defines "disability" as the inability to earn more than eighty percent of prior earnings in one's occupation due to sickness or injury. Dkt. 6-1, Pg. ID 47. To qualify for LTD benefits, a claimant must first continuously meet this definition for 180 days (the "Elimination Period"). Dkt. 6-1, Pg. ID 47. Plaintiff stopped working at Comcast on August 7, 2014. Thus in order to qualify for LTD benefits she must have been disabled from August 7, 2014, to February 8, 2015. Dkt. 6-5, Pg. ID 354.

The Plan also excludes pre-existing conditions from LTD coverage if the claimant has not been "Actively at Work" for 12 months. Dkt. 10-2, Pg. ID 2056. Pre-existing conditions are defined as any "sickness or accidental injury" for which a claimant received care, or experienced symptoms "that would cause a person to seek diagnosis, care or treatment," in the 3 months before claimant's coverage took effect. Dkt. 10-2, Pg. ID 2056.

The Summary Plan Description, a document that explains a claimant's rights and obligations under the Plan, designates Defendant as the Plan administrator and delegates to Defendant the

"sole discretion to interpret plan provisions and to determine questions of fact and eligibility for benefits." Dkt. 6-3, Pg. ID 145.

### 2. *Initial Denial of LTD Benefits*

As a Comcast customer service representative, Plaintiff worked at a desk and communicated with clients who were dissatisfied with Comcast's telecommunications services. Dkt. 7-6, Pg. ID 1786. Claiming she could no longer perform these tasks, Plaintiff took leave from Comcast beginning on August 7, 2014. Dkt. 6-6, Pg. ID 362. Plaintiff then applied for LTD benefits with Defendant. Dkt.7-5, Pg. ID 1636–52. Additionally, Plaintiff applied for and was denied Social Security Disability Insurance Benefits. Dkt. 7-6, Pg. ID 1774.

As part of its LTD benefit determination, Defendant requested medical records from Plaintiff's treating physicians. Dkt. 7-2, Pg. ID 1287–88, 1292–93; Dkt. 7-5, Pg. ID 1603–32. Dr. Brian Massaro's records indicate that Plaintiff was diagnosed with anxiety in or prior to 2011 and chronic fevers and fatigue since November 2013. Dkt. 6-6, Pg. ID 453. Plaintiff visited CFS specialist Dr. Martin Lerner on September 29, 2014. Dkt. 6-6, Pg. ID 496. Dr. Lerner's October 21, 2014, report informed Defendant that Plaintiff was unable to perform any sedentary work and noted that Plaintiff had been diagnosed with life-altering fatigue caused by viral infections. Dkt. 6-6, Pg. ID 496–98.

On May 22, 2015, Defendant referred Plaintiff's claim file with the records received from her treating physicians to two Independent Physician Consultants ("IPCs"). Dkt. 6-6, Pg. ID 418; Dkt. 6-6, Pg. ID 424.

First, Defendant referred Plaintiff's claim file to Dr. Abdulhamid Alkhalaf, an IPC certified in infectious diseases. Dkt. 6-6, Pg. ID 424–31. Dr. Alkhalaf issued a Peer Review Report that concluded functional impairments were not supported by information in Plaintiff's claim file. Dkt. 6-6, Pg. ID 428–30. Around June 4, 2015, Dr. Alkhalaf provided an addendum to his report after contacting Dr. Lerner, who advised Dr. Alkhalaf that Plaintiff was suffering from CFS. Dkt. 6-6, Pg. ID 406. Dr. Alkhalaf affirmed his opinion that Plaintiff was not disabled, explaining that "the medical community has not yet come to a consensus regarding the existence of [CFS]" and that he was "on the side of questioning [CFS]." Dkt. 6-6, Pg. ID 407.

Second, Defendant referred Plaintiff's claim file to Dr. Enrique Molina, an IPC certified in internal medicine with a subspecialty in gastroenterology. Dkt. 6-6, Pg. ID 418–23. Dr. Molina issued a report concluding that Plaintiff was not "continuously impaired" and thus not considered "disabled" under the Plan. Dkt. 6-6, Pg. ID 422. Defendant forwarded Dr. Molina's report and opinion to Dr. Lerner for comment. Dkt. 6-6, Pg. ID 417. Dr. Lerner replied

and expressed his disagreement with Dr. Molina's conclusions. Dr. Lerner explained that Plaintiff had "severe incapacitating life-altering fatigue" resulting from viral infections. Dkt. 6-6, Pg. ID 412–13.

On July 13, 2015, Defendant issued its initial adverse benefit determination. Dkt. 6-6, Pg. ID 361–64. Based on review of IPC reports and medical records from Plaintiff's physicians, Defendant concluded Plaintiff was not functionally impaired throughout the 180-day Elimination Period after her last day working at Comcast. Dkt. 6-6, Pg. ID 363. Plaintiff thus did not qualify as "disabled" under the Plan and was deemed ineligible for LTD benefits.[1] Dkt. 6-6, Pg. ID 363.

### 3. *Plaintiff's Unsuccessful Appeal*

Plaintiff appealed Defendant's initial denial. Dkt. 7-7, Pg. ID 1943. For consideration on appeal, Dr. Molina submitted an additional report on August 10, 2015. Dkt. 6-6, Pg. ID 394–95. After

---

[1] Defendant also points out that several of Plaintiff's medical conditions were ineligible for LTD coverage because they met the Plan's definition of "pre-existing conditions"; that is, Plaintiff had not worked for the company for 12 consecutive months prior to claiming disability, and was treated for these conditions within 3 months of the date that her benefits became effective. See Dkt. 10-2, Pg. ID 2056 (Plan definition and exclusion of pre-existing conditions), and Dkt. 15-1 (Exhibit W, Chart Listing Pre-existing Conditions). While such pre-existing conditions could have justified denying Plaintiff LTD coverage for *some* of her conditions, both parties agree that not all of her conditions were pre-existing under the Plan's definition. Nonetheless the denial of Plaintiff's LTD for *all* of her complained of conditions was properly based on her evaluating doctors' medical opinion evidence as discussed below.

speaking with Dr. Lerner, Dr. Molina stated that his communications with Dr. Lerner changed his original recommendation; Dr. Molina explained that he now felt that Plaintiff's viral infections would result in her being disabled. Dkt. 6-6, Pg. ID 394–95.

Defendant also solicited several IPC reports from Sedgwick Claims Management Services ("Sedgwick"), Comcast's short-term disability benefits claim administrator.[2] Dr. Michael Rater, an IPC certified in psychiatry, reviewed Plaintiff's medical file and issued two reports solely from a psychiatric perspective. Dkt. 7-7, Pg. ID 1900–06; Dkt. 7-7, Pg. ID 1869–78. Dr. Rater concluded in both reports—including in the second report he issued after speaking with Plaintiff's nurse practitioner Sherry Russell—that Plaintiff was not disabled from a psychiatric perspective. Dkt. 7-7, Pg. ID 1905; Dkt. 7-7, Pg. ID 1876. Dr. Olufemi Aboyeji, an IPC certified in infectious diseases, also issued two reports on behalf of Sedgwick. Dkt. 7-7, Pg. ID 1891–99; Dkt. 7-7, Pg. ID 1880–87. Dr. Aboyeji concluded in both reports that test results merely suggested Plaintiff had prior viral infections, not that she had ongoing viral infections that could cause disability. Dkt. 7-7, Pg. ID 1898; Dkt. 7-7, Pg. ID 1885–87.

---

[2] Sedgwick denied Plaintiff's claim for short-term disability benefits on September 23, 2014. Dkt. 6-7, Pg. ID 502.

7

In addition to the two short-term disability IPCs, Defendant referred Plaintiff's claim to a third IPC, Dr. John Brusch, who is certified in internal medicine with a specialty in infectious diseases. Dkt. 7-6, Pg. ID 1765. Dr. Brusch prepared two reports. He wrote his second report after discussing his first report with Plaintiff's physician Dr. Susan Levine.[3] Dkt. 7-6, Pg. ID 1759–65; Dkt. 7-6, Pg. ID 1746–47. Dr. Brusch's first report concluded Plaintiff was not disabled. Dkt. 7-6, Pg. ID 1763. Dr. Brusch explained that CFS is diagnosed by excluding other sources of fatigue. Dkt. 7-6, Pg. ID 1764. Behavioral health issues like depression, Dr. Brusch reasoned, were more likely the source of Plaintiff's fatigue. Dkt. 7-6, Pg. ID 1764. Dr. Brusch provided his report to Dr. Levine for her comments.

Dr. Levine responded on April 15, 2016, and expressed her disagreement with Dr. Brusch's report. Dr. Levine explained that she and Dr. Lerner were experts in the CFS field. Dkt. 7-6, Pg. ID 1751. Dr. Levine detailed the disabling effects of CFS and her disagreement with Defendant's adverse determination despite her and Dr. Lerner's medical opinions. Dkt. 7-6, Pg. ID 1751. Defend-

---

[3] On January 11, 2015, Plaintiff's counsel informed Defendant that Dr. Lerner had died and that Plaintiff would seek treatment from other physicians. Dkt. 7-7, Pg. ID 1932.

8

ant forwarded Dr. Levine' response to Dr. Brusch for his consideration.

Dr. Brusch's second report reiterated that he disagreed with Dr. Levine because behavioral health issues were more likely the cause of Plaintiff's symptoms than CFS. Dr. Brusch cited two reasons in support of his opinion: (1) since diagnosing CFS is a process of exclusion, behavioral health issues such as depression or personality disorder should be ruled out before concluding Plaintiff has CFS; and (2) Dr. Levine misinterpreted the medical diagnostic testing as indicating ongoing viral infections (Epstein-Barr virus, cytomegalovirus, and human herpes virus 6) when Plaintiff's diagnostic tests only supported prior viral infection. Dkt. 7-6, Pg. ID 1746.

Defendant affirmed its initial denial of Plaintiff's LTD claim on May 25, 2016. Dkt. 7-6, Pg. ID 1740–45. Defendant explained Plaintiff's medical diagnostic testing supported prior but not persistent viral infections. Dkt. 7-6, Pg. ID 1743. "[Plaintiff] had old self-contained infections that had no bearing on her current symptoms." Dkt. 7-6, Pg. ID 1743. Defendant also noted that CFS is diagnosed by ruling out other potential causes for overwhelming fatigue. Dkt. 7-6, Pg. ID 1743. Defendant concluded that behavior health issues such as depression, which had not been ruled out as

9

a cause of Plaintiff's fatigue, were more likely the source of Plaintiff's symptoms.

### III. Standard of Review

The Employee Retirement Income Security Act ("ERISA") provides a cause of action for participants or beneficiaries of certain LTD plans to challenge benefit determinations. 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that generally, "a denial of benefits challenged under section 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *accord Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 566 (6th Cir. 2013). Here, the parties agree that the Plan vests the administrator with discretionary authority to determine eligibility for benefits. Dkt. 9, Pg. ID 1964; Dkt. 10, Pg. ID 1998; Dkt. 14, Pg. ID

2285. Accordingly, the Court will review the Trustees' decision under the deferential arbitrary and capricious standard.[4]

Under the arbitrary and capricious standard of review, a policy administrator's decision must be upheld if it is "rational in light of the plan's provisions." *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Administrators' decisions are upheld under this standard "[w]hen it is possible to offer a reasoned explanation, based on the evidence" for that particular outcome. *Shaw v. AT&T Umbrella Ben. Plan No. 1*, 795 F.3d 538, 547 (6th Cir. 2015) (quoting *Davis v. Ky. Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). An administrator's decision can be overturned "upon a showing of internal inconsistency, bad faith, or some similar ground." *Magdziak v. Metro. Life Ins. Co.*, 920 F. Supp. 2d 782, 790 (E.D. Mich. 2013). For example, "an administrator abuses its discretion when it engages in a 'selective review of the administrative record' to justify a decision to terminate coverage." *Dockery v. USG Corp. Retirement Plan*, No. 08–13249, 2009 WL 2960471, at

---

[4] While Mich. Admin. Code R. 500.2202(b) bars grants of discretion in certain insurance policy documents delivered within Michigan, the statute does not alter the standard of review here. Because the grant of discretion was contained in the Summary Plan Description, Dkt. 6-3, Pg. ID 145–46, § 500.2202(b) does not bar it. The arbitrary and capricious standard is therefore the appropriate standard of review. *See Rose v. Liberty Life Assurance Co. of Bos.*, No. 3:15-cv-28-DJH-CHL, 2016 WL 1178801, at *3–4 (W.D. Ky. Mar. 23, 2016); *Markey-Shanks v. Metropolitan Life Ins. Co.*, No. 1:12–CV–342, 2013 WL 3818838, at *5–7 (W.D. Mich. July 23, 2013); *Hess v. Metropolitan Life Ins. Co.*, 91 F. Supp. 3d 895, 901–02 (E.D. Mich. 2015).

*11 (E.D. Mich. Sept. 11, 2009) (quoting *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381 (6th Cir. 2005)).

## IV. Analysis

Plaintiff argues that Defendant's determination was arbitrary and capricious because Defendant improperly credited the opinions of IPCs over Plaintiff's treating physicians, including Drs. Lerner and Levine. Dkt. 9, Pg. ID 1965. Plaintiff further argues that Defendant's decision not to conduct its own physical examination of Plaintiff compounded this deficiency in its evaluation of Plaintiff's claim. Dkt. 9, Pg. ID 1966. Finally, Plaintiff claims, it was an abuse of discretion for Defendant to rely on Dr. Alkhalaf's opinion after Dr. Alkhalaf stated he did not recognize CFS as a medical condition. Dkt. 14, Pg. ID 2286–87.

Defendant responds that it relied on five qualified IPCs in making its determination and offered reasons for its disagreement with Plaintiff's treating physicians. Dkt. 15, Pg. ID 2297. Drs. Alkhalaf, Aboyeji, and Brusch, each of whom is certified in or specializes in infectious diseases, concluded that the objective medical evidence of Plaintiff's diagnoses did not support continuous disability during the 180-day Elimination Period after Plaintiff's last day at Comcast. Accordingly, Defendant asserts, the decision to deny Plaintiff's LTD claim was neither arbitrary nor capricious.

Defendant acted within its discretion in relying on IPCs rather than Plaintiff's treating physicians. To withstand review under the arbitrary and capricious standard a plan administrator must offer reasons for rejecting the opinions of a claimant's treating physicians—rather than rejecting them summarily. *See Shaw*, 795 F.3d at 548–49. Here, the IPCs considered Plaintiff's treating physicians' opinions. Each IPC gave his report to either Dr. Lerner or Dr. Levine for comment. And each IPC then issued either a second report or addendum to their first report, specifically addressing Dr. Lerner's and Dr. Levine's concerns. Drs. Lerner and Levine interpreted Plaintiff's medical diagnostic results as indicating she had CFS as the result of viral infections. Drs. Aboyeji and Brusch interpreted these same results differently and concluded they only indicated Plaintiff once had viral infections—not that these infections were ongoing.[5]

Dr. Brusch also reasoned that diagnosing CFS was a process of exclusion, and behavioral health issues such as depression or per-

---

[5] Defendant does not specifically address its disagreement with Dr. Molina, who issued an addendum to his report after speaking with Dr. Lerner. Dr. Molina reversed his opinion after concluding medical diagnostic testing indicated Plaintiff would be considered "disabled" under the Plan. Although Defendant does not discuss Dr. Molina's addendum in its appeal decision, it does address Dr. Molina's interpretation of Plaintiff's medical diagnostic results. Furthermore, it was not an abuse of discretion for Defendant to credit the opinions of IPCs who opined from an infectious diseases perspective, since Plaintiff claimed her CFS resulted from viral infections and Dr. Molina wrote solely from a gastroenterological and internal medicine perspective.

13

sonality disorder were more likely the cause of Plaintiff's fatigue. Thus, Dr. Brusch concluded, further evidence was required to diagnose Plaintiff with CFS. Defendant noted these reasons in its May 25, 2016 appeal determination letter. Because Defendant documented these medical disagreements and its reasons for crediting Dr. Aboyeji's and Dr. Brusch's opinions over those of Plaintiff's treating physicians, Defendant's LTD benefits claim denial was not arbitrary and capricious.

Moreover, contrary to Plaintiff's assertion, Defendant was not required to give special weight to the opinions of Plaintiff's treating physicians over those of IPCs hired by Defendant. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."); *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010) ("Reliance on other physicians is reasonable so long as the administrator does not totally ignore the treating physician's opinions."). Unlike claims for Social Security insurance disability benefits, the "treating physician rule" does not apply to disability determinations under employee benefits plans covered by ERISA. *Black & Decker Disability*

14

*Plan*, 538 U.S. at 825. It was therefore not an abuse of discretion for Defendant to credit the opinions of the IPCs rather than those of Drs. Lerner and Levine.

Finally, Defendant was not required to conduct its own physical examination of Plaintiff. While it is preferable for a LTD plan administrator to conduct its own physical exam of a claimant, it is not required. *See Helfman v. GE Grp. Life Assurance Co.* 573 F.3d 383, 393 (6th Cir. 2009) ("[W]hile this court has found that an administrator is not barred from engaging in a file review in lieu of a physical exam, 'the failure to conduct a physical examination . . . may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.'") (quoting *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005)).

Here, instead of a physical examination, Defendant considered the opinions of five IPCs, three of whom discussed Plaintiff's condition with her treating physicians. Three of the IPCs were certified or specialized in infectious diseases, which Dr. Lerner cited as the cause of Plaintiff's CFS. While Defendant's failure to physically examine Plaintiff is a relevant consideration in evaluating the thoroughness of Defendant's review of Plaintiff's claim, here Defendant relied on IPCs with specialized knowledge who reviewed Plaintiff's medical file and directly consulted with Plaintiff's treat-

15

ing physicians. These steps indicate Defendant thoroughly reviewed Plaintiff's claim.

In sum, Defendant acted within its discretion in denying Plaintiff's LTD benefits claim. Although several of Defendant's IPCs rejected the opinions of Plaintiff's treating physicians, they thoroughly considered them. And Defendant provided the reasons for the denial in its appeal determination letter. Thus, because Defendant was not required to give deference to Plaintiff's treating physicians, or physically examine Plaintiff, the Court finds that that Defendant's denial of LTD benefits under the Plan was not arbitrary and capricious.

## V. Conclusion

For the foregoing reasons, Plaintiff's motion to reverse Defendant's ERISA determination and grant long-term disability benefits is **DENIED**, and Defendant's motion to affirm its benefit denial decision is **GRANTED**.

**SO ORDERED.**

Dated: August 25, 2017

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on August 25, 2017.

s/A. Chubb<br>
Case Manager